UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MUSTAFA A., | Case No. 19-cv-917-KMM |
| Plaintiff, | |
| v. | **ORDER** |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

This case is an appeal from the denial of Mustafa A.'s ("Mr. A" or "Plaintiff") application for Social Security disability benefits and is before the Court on the parties' cross-motions for summary judgment. Pl.'s Mot., ECF No. 11; Def.'s Mot., ECF No. 13. Mr. A argues that an Administrative Law Judge ("ALJ") should have found that his bilateral elbow impairments limits his ability to reach, and if the ALJ had made such a finding, Mr. A asserts that he would be precluded from engaging in full-time employment. Having reviewed the record and the parties' arguments, the Court concludes that the ALJ's decision was adequately supported and did not result from any legal error. As a result, Mr. A's motion for summary judgment is denied, the Commissioner's summary-judgment motion is granted, and this action is dismissed.

**I.    Background**

Mr. A is 50 years old and has previously worked in manufacturing as a machine operator. His work often required lifting objects over 50 pounds. Admin. Record ("R.") 348–53, ECF No. 10. Mr. A claims that he became unable to work due to depression, anxiety, lateral epicondylitis (also known as "tennis elbow"), headaches, and problems with his knees.[1] R. 82–83. Mr. A asserts that his mental- and physical-health issues affect him in the following he was: he is unable to do any household chores or yard work; he does not

---

[1]    Mr. A initially asserted that he had been unable to work due to these conditions since 1995, but he later amended the alleged onset date of his disability to July 19, 2016. R. 10.

prepare meals; he needs reminders to take medicine and take care of personal needs and grooming; he becomes irritated with other people easily; and he is unable to engage in a several activities due to pain. However, he can drive a car and do some shopping for food and clothing. R. 330–37.

Mr. A filed disability applications with the Social Security Administration on July 15, 2016 (for Title II disability insurance benefits) and January 10, 2017 (for Title XVI supplemental security income). The Agency denied his claims initially and on reconsideration, and he requested a hearing before an ALJ. An ALJ held a hearing on April 23, 2018, and later issued a written decision concluding that Mr. A was not disabled under the Social Security Act. R. 10–20.

The ALJ found that Mr. A has the following severe impairments: "lateral epicondylitis of the bilateral elbows, status post right elbow debridement; coronary artery disease; depression; and anxiety disorder." R 13. Next, the ALJ concluded that none of Mr. A's impairments, alone or in combination, meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then turned to the determination of Mr. A's residual functional capacity (or "RFC"). An RFC finding reflects the mental and physical work-related activities a disability claimant can do when the limitations caused by all of his or her impairments are taken into account. *See* 20 C.F.R. § 404.1545(a)(1) (stating that a claimant's "residual functional capacity is the most he can still do despite his limitations"). The RFC finding in this case is central to Mr. A's claim that the ALJ erred.

Here, the ALJ found that Mr. A could perform "sedentary work" subject to additional restrictions, as follows:

> [Mr. A] can lift up to 10 pounds, stand and/or walk (with normal breaks) about 6 hours in an 8-hour day, sit (with normal breaks) about 6 hours in an 8-hour day, occasionally climb, and frequently handle bilaterally. [He] can understand, remember, and carry out routine, simple instructions; respond appropriately to changes in a work setting involving routine, simple tasks; and make judgments on simple work-related decisions.

R. 14. The RFC finding included no specific limitations on Mr. A's ability to reach.

In light of the RFC finding, the ALJ next determined that Mr. A could no longer perform his past relevant work as a metal fabricator. R. 18. However, because the ALJ determined that there are a significant number of jobs in the national economy that a person with Mr. A's RFC could perform, Mr. A was deemed not disabled. R. 19–20. Mr. A administratively appealed the ALJ's decision, but the Social Security Appeals Council denied review, and this lawsuit followed.

## II.     Legal Standard

Federal courts will uphold the Commissioner's denial of a disability claim if substantial evidence supports the ALJ's findings and if the decision is not based on legal error. *See Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011). "Legal error may be an error of procedure, … the use of erroneous legal standards, or an incorrect application of the law," and courts review whether an ALJ based a decision on legal error de novo. *Collins*, 648 F.3d at 871 (internal citations omitted).

The substantial-evidence standard is more deferential. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 148, 1154 (2019) (citation omitted); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). Under this standard, courts should not reverse the Commissioner's findings merely because evidence may exist in the administrative record that would support a different conclusion. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). Instead, a court will reverse only when the ALJ's decision is outside the reasonable "zone of choice" created by the evidentiary record. *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008).

## III.    Analysis

Mr. A's appeal focuses on the adequacy of the ALJ's RFC determination, and specifically, on the absence of any limitation regarding his to reach. Pl.'s Mem. at 3–6, ECF No. 12. For the reasons that follow, the Court concludes that the ALJ's RFC finding was adequately supported and did not result from any legal error.

### A. The RFC Finding

As noted above, a claimant's RFC is "the most [he] can still do despite" his physical or mental limitations. 20 C.F.R. § 404.1545(a); *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The determination of a claimant's RFC is a "medical questions that must be supported by some medical evidence of [the claimant's] ability to function in the workplace." *Noerper*, 964 F.3d at 744 (cleaned up). Though medical evidence supporting the RFC must exist, "the RFC is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Id.* The ALJ must determine the RFC "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Id.* (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)); *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (same) (rejecting a claimant's arguments that the ALJ erred in determining she retained the ability to engaging in frequent reaching with her upper extremities).

### B. Failure to Consider Upper-Extremity Limitations

Mr. A first argues that the ALJ erred because the written decision contains no discussion of his ability to reach. Mr. A suggests that the ALJ did not consider this issue and erred because he did not conduct the function-by-function analysis required under Social Security Ruling 96-8p. The Court disagrees.

The Social Security regulations provide that in considering a claimant's physical abilities as part of the RFC, the ALJ must "first assess the nature and extent of [his] physical limitations and then determine [his] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). Further, "[a] limited ability to perform certain physical demands of work activity … including manipulative or postural functions, such as reaching … may reduce [a claimant's] ability to do past work and other work." *Id.* Under Social Security Ruling 96-8p, the RFC assessment should first identify, on a function-by-function basis, a claimant's work-related abilities. SSR 96-8p, 1996 WL 374184 (July 2, 1996). Following that functional analysis, the ALJ may discuss the RFC in terms of the exertional levels of work, including the following short-hand categories: sedentary, light, medium, heavy, and very heavy. *Id.* Social Security Ruling 96-8p states that "a failure to make the function-by-function assessment 'could result in the adjudicator overlooking some of an

individual's limitations or restrictions.'" *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) (quoting SSR 96-8p).

However, despite SSR 96-8p's language regarding the function-by-function assessment, courts have consistently held that an ALJ is not required to make explicit findings with respect to every possible functional limitation when explaining an RFC decision. *Depover*, 349 F.3d at 567 (concluding that the ALJ did not err in failing to make explicit findings regarding the claimant's ability to sit, stand, and walk because "the record reflect[ed] that the ALJ implicitly found that Mr. Depover was not limited in these areas...."); *Mink v. Berryhill*, No. 5:17-CV-06088-DGK-SSA, 2018 WL 3474087, at *2 (W.D. Mo. July 19, 2018) (citing *Depover*, 349 F.3d at 567); *Sterba v. Berryhill*, No. 16-CV-2001-JCW, 2017 WL 924471, at *7 (N.D. Iowa Mar. 8, 2017) ("It is not, however, reversible error for an ALJ not to mention all functional areas."). This case law undermines Mr. A's suggestion that the absence of a specific discussion regarding his ability to reach with his upper extremities requires reversal of the Commissioner's decision.

In addition, the record and the ALJ's written decision do not support Mr. A's claim that the ALJ failed to consider whether a reaching limitation was appropriate. The ALJ expressly found that Mr. A's bilateral epicondylitis (post-debridement procedure) was a severe impairment. R. 13. This means the ALJ determined that Mr. A's upper extremity issues had caused more than minimal limitations in his physical ability to do basic work activities for at least a twelve-month period. 20 C.F.R. §§ 404.1521, 416.921 (defining when an impairment is severe). Further, in the context of the RFC finding itself, the ALJ discussed the medical and other evidence in the record relating to Mr. A's bilateral upper-extremity impairments. Ultimately, however, the ALJ concluded that the evidence did not support greater restrictions than those imposed by the RFC. R. 15–17.[2] In fact the ALJ specifically discussed Mr. A's right elbow debridement surgery in August 2017, that he was successfully

---

[2]     R. 15 (discussing Mr. A's reports of pain in his elbows leading up to the alleged onset date, but rejecting the notion that his condition deteriorated over time or prevented him from all full-time work); *id.* (discussing limited work restrictions by Mr. A's physician regarding pushing and pulling, but finding them consistent with the RFC finding's limitation to sedentary work); R. 16 (noting reports of bilateral elbow pain in February 2017, though good overall performance on examination was "in keeping with a finding of no elbow-related limitation greater than reflected in the residual functional capacity established").

discharged from physical therapy following the procedure, and that he "regained the ability to do most things, with the objective findings, frankly, indicating greater functional ability that reflected in the established residual functional capacity." R. 16. Under these circumstances, "the record reflects that the ALJ implicitly found that [Mr. A] was not limited" in his ability to reach. *Depover*, 349 F.3d at 567. It is simply incorrect to characterize the ALJ's opinion as having disregarded the evidence concerning his upper-extremity impairments or failing to consider whether those impairments required any specific limitation in the RFC finding.

### C.    Substantial Evidence

Mr. A contends that "the record is replete with evidence supporting [his] reaching limitations as well as allegations of the same," citing his hearing testimony and several medical records, including some that imposed lifting restrictions. Pl.'s Mem. at 4–5. However, for several reasons, the ALJ's RFC finding was adequately supported by evidence in the record as a whole.

First, although Mr. A does not explicitly argue that the ALJ erred in assessing his own statements regarding the limiting effects of his impairments, he cites to portions of his own testimony at the hearing to support his claim that the ALJ erred.[3] To the extent Mr. A suggests otherwise, the Court finds that the ALJ appropriately considered Mr. A's hearing testimony and his other statements regarding the limiting effects of his symptoms as part of the overall record and provided a valid basis for assessing those statements alongside the rest of the evidence. The ALJ acknowledged Mr. A's statements regarding the degree to which his impairments limited his functional abilities, but concluded that his statements concerning the intensity, persistence, and limiting effects of his conditions was not entirely consistent with the other evidence in the record. R. 15 (discussing Mr. A's statements about his symptoms, but finding greater RFC limitations unsupported by the evidence). The ALJ then proceeded to discuss the bases for concluding that the evidence in the record aligned with the RFC finding and did not require greater restrictions that would have reflected Mr. A's

---

[3]    Mr. A cites to his hearing testimony in which he states that he stopped working because of his elbow injury, had challenges with holding his arms in front of him and typing on a keyboard, and experienced pain and numbness. Pl.'s Mem. at 4 (citing R. 44–46, 55–58).)

own statements regarding the limiting effects of his impairments. R. 15–18. The ALJ considered Mr. A's significant work activities, including heavy lifting, right up until his amended alleged onset date and well after the onset of his elbow problems. The ALJ also examined Mr. A's medical records, including those containing lifting restrictions, and found that they were consistent with the RFC imposed. The ALJ evaluated the overall objective medical evidence in the record, such as results of physical examinations. *Id.* Here, the ALJ did not reject Mr. A's statements about the intensity and persistence of his symptoms "solely because the available objective medical evidence does not substantiate those statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Instead, the ALJ's analysis reflects a consideration of the objective medical evidence as "a useful indicator to assist [the Commissioner] in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work." *Id.* §§ 404.1529(c)(2), 416.929(c)(2).

Second, Mr. A relies heavily on doctors' orders placing him on *lifting* restrictions, but these records do not persuade the Court that the ALJ was required to include a *reaching* limitation in the RFC. The overall evidence regarding Mr. A's tennis-elbow condition simply does not mean that the RFC was unsupported by substantial evidence. Though the Court is not persuaded by the Commissioner's focus on the fact that some records regarding his elbow impairment pre-date the alleged onset date,[4] the problem for Mr. A's appeal is that

---

[4] The Commissioner notes that some of the lifting-restriction records Mr. A cites pre-date his alleged onset of disability in July 2016. *See, e.g.*, R. 436–37 (discussing five-pound lifting restriction from June 2016); R. 442 (two-pound lifting restriction in Apr. 2016 following a platelet-rich-plasma injection); R. 270 (amended onset date of July 19, 2016). Although the Commissioner is correct that an ALJ generally is not required to consider evidence from outside the relevant period for a disability determination, such evidence can often illuminate the severity or extent of an impairment. *Compare Bannister v. Astrue*, 730 F. Supp. 3d 946, 951 (S.D. Iowa 2016) (ALJ not obligated to consider evidence from outside disability period), *with Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) ("Evidence from outside the insured period can be used in helping to elucidate a medical condition during the time for which benefits might be rewarded.") (internal quotations removed). Mr. A's bilateral tennis elbow condition ultimately required an invasive surgery. R. 1035 (indicating that the surgeon would not describe the procedure as minimally invasive). Given that such a procedure was ultimately because other conservative treatment had been unsuccessful, records relating to Mr. A's elbow condition from before the alleged onset date help

*(footnote continued on next page)*

7

neither the records that pre-date July 2016, nor those that come later, support a more limited RFC including a reaching restriction. Mr. A cannot point to any pre-onset-date records that mention a limited ability to reach.[5]

After his alleged-onset date, this reality does not change. In July 2016, although a ten-pound weightbearing restriction was maintained, Mr. A's orthopedist assessed good range of motion bilaterally in his upper extremities and noted that Mr. A had not completed the occupational therapy deemed necessary to treat his condition. R. 405 (explaining that Mr. A's tennis-elbow condition requires 10-12 months of formal occupational therapy but Mr. A participated for only one month). One care-provider's October 2016 letter suggests that Mr. A could not work in a job with more than a five-pound lifting restriction, but this provider does not mention any limitation on his ability to reach.[6] R. 572. In several other records from after the alleged onset date, Mr. A is noted as being able to move all four of his

---

illuminate his medical condition within the disability period. Accordingly, the Court does not find these pre-onset-date records to be irrelevant to Mr. A's claim.

[5]     R. 446–47 (May 2016 second opinion discussing possibility of chronic tennis elbow condition, likely need for vocational rehab, and optional course of platelet-rich-plasma injections); 450–51 (Feb. 2016 office visit regarding bilateral discomfort of bilateral elbows and suggesting follow up regarding possible arthroscopic treatment); R. 454 (Jan. 2016 office visit discussing getting a second opinion from a specialist to review elbow impairment); R. 461–63 (Nov. 2015 office visit re complaints of numbness and tingling in some fingers; but finding 5/5 strength and good range of motion in bilateral elbows; suggesting Mr. A appropriate for occupational therapy); R. 473–74 (Aug. 2015 occupational therapy visit; Mr. A believed he was not improving with therapy and did not wish to schedule further therapy; plan was for discharge from occupational therapy); R. 476–77 (Aug. 2015 occupational therapy assessment for elbows; decreased range of motion and decreased strength assessed; good candidate for occupational therapy); R. 478–80 (Jul. 2015 orthopedic visit diagnosing bilateral tennis elbow; noting "particularly resistant case of lateral epicondylitis"; recommending naproxen anti-inflammatory twice a day and referring to occupational therapist).

[6]     Mr. A does not challenge the ALJ's rejection of Dr. Randy Kenniger's opinion imposing a five-pound lifting restriction. The ALJ found that the records of four of Mr. A's treating providers supported that Mr. A could lift ten pounds at least occasionally. R. 17. It is generally not error for an ALJ to discount a treating source's opinion where it is inconsistent with other substantial evidence in the record. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (providing that it is permissible for an ALJ to discount a treating physician's opinion that is inconsistent with the medical record as a whole).

8

extremities or as having a normal range of motion.[7] In February 2017, although a physician examining his elbow impairment believed nonoperative treatments had failed, Mr. A's range of motion was found to be "equal, normal and symmetrical."[8] R. 982.

Not only does the record not support the need for reaching limitations between the July 2016 onset date and his August 2017 surgery, but the record shows substantial improvement in his elbows after surgery and rehabilitation. R. 1035 (Aug. 2017 open debridement procedure surgical note). By mid-October 2017, Mr. A indicated that he had "no difficulty" in using a knife to cut food and that he had only a "little bit of difficulty" with functional activities such as: opening containers; household tasks; carrying a shopping bag; recreational sports; brushing teeth, combing hair, washing face; using tools or appliances; and "*reaching out and up to grasp things*." R. 988–89 (emphasis added).[9]

Overall, the evidence suggests that Mr. A had a difficult time with his bilateral elbow condition. He reported pain with activity in both elbows, more significant on the right side, ultimately leading to an invasive right elbow surgery. But even prior to his surgery, there was no indication in the record that he was prevented from reaching with his arms. And after his surgery and recovery were complete, his most significant issues appeared to resolve. He ultimately reported the ability to engage in activities that are inconsistent with the need for a reaching restriction. The record, therefore, does not indicate a more restrictive RFC was required. The existence of some evidence in the record that may be consistent with a more restrictive RFC does not warrant reversal. *See, e.g.*, *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (providing that under the substantial-evidence standard the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence and [the court] may have reached a different outcome"). Here, the ALJ's RFC determination fell within the

---

[7] R. 562, 702, 913, 934, 957, 981–82.

[8] The ALJ specifically relied on this record, noting that Mr. A "performed well on overall examination in keeping with a finding of no elbow-related limitation greater than reflected in the residual functional capacity established above." R. 16. The ALJ's assessment on this point is supported by the evidence.

[9] The ALJ properly noted Mr. A's post-surgical improvement and successful occupational therapy. R. 16 ("The undersigned further notes that the claimant did quite well from a post-surgical perspective").

9

available "zone of choice" suggested by the evidence of Mr. A's bilateral tennis elbow impairment. Accordingly, the ALJ's decision must be affirmed.

IV.   Order

    **IT IS HEREBY ORDERED THAT**

    1.    Plaintiff's Motion for Summary Judgment **(ECF No. 11)** is **DENIED**;

    2.    Defendant's Motion for Summary Judgment **(ECF No. 13)** is **GRANTED**;

and

    3.    This matter is **DISMISSED WITH PREJUDICE**.

    **Let Judgment be entered accordingly.**

Date: September 29, 2020

                                                  *s/Katherine Menendez*
                                                  Katherine Menendez
                                                  United States Magistrate Judge